Frank C. Sheely, Appellee, v. John Sall and Harry O. Swanson, Appellants.

Gen. No. 9,068.

Opinion filed September 3, 1936. Rehearing denied October 6, 1936.

HALL & DUSHER, of Rockford, for appellants.

KARL C. WILLIAMS, of Rockford, and FRED E. GARDNER, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

This suit for damages was begun in the circuit court of Winnebago county on April 13, 1934, for personal injuries alleged to have been caused by the negligence of the defendants whose automobile struck the plaintiff. The plaintiff's petition is in the usual form,

charging the defendants with the negligent operation of their automobile, and that through the careless and negligent acts of the defendants, the plaintiff was injured. The defendants filed their answer denying that they negligently operated their automobile and that the plaintiff was injured by no fault of theirs. The case was submitted to a jury for trial who found a verdict in favor of the plaintiff and assessed his damages at $6,500. A motion for a new trial was overruled, judgment entered on the verdict and the case brought to this court for review.

The evidence shows that the defendant, Sall, was the owner of a new DeSoto automobile; that Sall and his wife had driven the automobile to the home of the defendant, Swanson, for the purpose of taking Mr. Swanson and his wife for a ride. The four of them got into the car with Mr. Swanson driving. Swanson and Sall were sitting in the front seat and Mrs. Swanson and Mrs. Sall were sitting in the rear seat.

Harlem Boulevard is a street extending north and south in Rockford, Illinois, and it is what is commonly called a four-lane traffic street; two lanes of traffic on the east and two on the west, separated by a parkway approximately 25 feet in width. The accident happened about 8:00 p. m., January 29, 1934. Sheely, the plaintiff, was employed by one Lerdall as an assistant in moving some household goods from the city of Dixon to the 1100 block on Harlem Boulevard in the city of Rockford. As they arrived, they drove up in front of the property and waited probably 15 minutes for the traffic to slow down, so that they would feel safe in backing their truck across the street and up to the door of the residence to unload the furniture. Just what happened prior to the time of the accident is somewhat in dispute, but we think the evidence shows that Lerdall and the plaintiff drove their truck parallel with Harlem Boulevard in front of the house in which they

intended to unload the furniture; that Lerdall was attempting to back the truck across Harlem Boulevard onto the sidewalk and yard, and the truck was in this position as the defendants approached from the south and when the plaintiff was injured. The pavement on the east lane of traffic on Harlem Boulevard is 18 feet wide and the truck in question was 18 to 20 feet long.

The plaintiff contends that he was standing a distance of probably 18 to 20 feet south of the truck waving a flashlight to warn approaching cars that they were backing the truck across the street; that the defendant's car approached rapidly without any lights; when it was within 50 or 60 feet of the truck he saw that it was not going to stop and he ran over to the parkway and was struck by the car and injured. Lerdall, the owner of the truck, partly corroborated the plaintiff's evidence and stated that in his estimation, the automobile was approaching at a rate of 35 to 45 miles an hour.

The defendants claim that the headlights on their car were burning and that after the accident one of the lights was bent, but still burning and threw a beam of light straight up into the air; that plaintiff was not exhibiting a flashlight south of the truck nor standing south of the truck; that they did not see the truck blockading the road until they were within 50 to 75 feet of the truck; that in order to avoid a collision, they drove over on the parkway west of the truck and as they did so, the plaintiff came around from the north side of the truck and was knocked down by the automobile; that the defendant's car was stopped almost instantly after the collision; that they were driving at a reasonable rate of speed, not to exceed 20 to 25 miles per hour. Sheely was taken to the hospital by the defendants and he remained there for some time.

At the hearing of the case, the defendants offered in evidence a copy of an ordinance of the city of Rockford, Illinois, to the effect as follows: "No animal

drawn or motor driven vehicle shall be allowed to stand in any street unless the right hand wheels thereof are within 18 inches of the curb line." This offer was refused by the trial court. From a review of the evidence in this case, it is our conclusion that the truck of Lerdall was not allowed to stand in a public street; therefore the city ordinance was not applicable. The evidence in this case clearly discloses that the truck was not standing, but was being backed across the street preparatory to being unloaded on the east side of the street. The court did not err in refusing to admit the ordinance in question.

The appellants criticize several instructions given on behalf of the plaintiff. We have examined the instructions and are of the opinion that they fairly set forth the law applicable to the case and the jury could not be misled by the instructions. We also considered the argument of the appellants in regard to the refused instructions offered on behalf of the defendant. It is our conclusion that the jury was properly instructed relative to the law in the case.

A more serious question arises upon the whole of the evidence in this case. The plaintiff gave his version of what he ws doing just before and at the time of the accident. He was corroborated somewhat by the owner of the truck. The defendant, Sall and his wife, and Swanson and his wife all stated positively that Sheely was not south of the truck waving a flashlight as they approached. The evidence is not contradicted that on the east side of the driveway, there were trees and telephone poles and that the plaintiff by taking three or four steps east could have put himself in a place of safety. According to his testimony, he saw the car was not going to stop when it was from 50 to 75 feet south of the truck. He knew that this was a much traveled street as they had waited 15 minutes for the traffic to slow down, so that they could attempt to back the truck across the street. Instead of going east to a place of

safety, he ran west, the only way that a car could pass around the truck in safety. According to his own testimony, he ran directly in front of the automobile as it approached from the south. On the east side of the street there is an 8-inch curbing and on the west side adjoining the parkway there is a 4-inch curbing. There was no obstruction whatsoever in the parkway and a car could easily drive upon the parkway and then around the truck. Immediately after the accident, two cars approaching from the south did drive upon the parkway and around the plaintiff's truck and the defendant's car and then back onto the street and then on north. It is a well known fact where streets or roads are built for four lanes of traffic, cars are expected to be driven at a greater rate of speed than that on ordinary roads. They are built for this very purpose so as to relieve congestion in the traffic. The plaintiff was engaged in a dangerous undertaking in backing the truck at night across this road. Neither headlights nor tail lights of the truck would be visible to a car approaching from the south, as this truck was being backed nearly straight across this congested street. He knew that any minute a car might come from the south and if it was not warned that the street was blockaded, there probably would be an accident.

This court is reluctant to set aside a verdict of the jury on the ground that the verdict is against the weight of the evidence. After reading this record, we have come to the conclusion that the plaintiff has failed to prove that just before and at the time of the accident in question, he was in the exercise of due care and caution for his own safety.

The judgment of the circuit court of Winnebago county is hereby reversed and the case remanded.

*Reversed and remanded.*